All right, good morning everyone. Welcome to the Ninth Circuit. We're pleased to have everyone here today for argument. Before we begin, Judge Wallace and I would like to extend a very warm welcome to Judge Morrison England from the Eastern District of California. Judge England, welcome and thank you for being here with us this morning for your service to the court. Thank you. We have one case which was dismissed, that is Dytek Financial v. Valencia Management, LLC. An order has been entered. We have one case that was submitted on the briefs, that is Hamidullah Makhmur v. Mission Essential Personnel. That case is submitted. We will now do argument in the order of the advance sheets, beginning with the first case, United States of America v. Fernando Romero-Salgado. Counsel, you may proceed. Good morning. May it please the Court, my name is Ryan Moore. I represent the appellant in this matter, Mr. Romero-Salgado. I'll reserve three minutes and I'll watch the clock. I'll focus this morning on the jury instruction issues, first with regard to Count 1's smuggling offense under Section 554, and then with regard to Count 3's felon in possession offense. The jury instruction as to Count 1's offense omitted Section 554's essential element of knowledge that the exportation would be contrary to law. The plainness of this error, the government doesn't dispute that that was error, only the plainness of the error and whether it was harmless, but the plainness of the error is evident for two equally good reasons. First is that this Court has long held, since 1932 in the Crank case, that a nearly identical importation statute requires the knowledge element that we assert exists here. The Court reaffirmed that holding again in 1970 in Meyer with regard to that same importation statute. That wouldn't normally be enough to show that an error was plain, but in 2008, this Court looked at that importation statute, Section 545, and the current statute at issue, Section 554, and held that they are so closely related as to provide a, quote, classic case for application of the normal rule that two statutes created for a similar purpose, amended in the same act, and using the same language should have their terms interpreted similarly. It's also plain under Rivero. And Rivero came out just after the trial in this case, but, of course, while this case is ongoing.  Didn't Rivero reserve the issue? Well, what Rivero did is Rivero did say in a footnote that the defendant hasn't asked us to determine whether the omission of the knowledge element was error in this case, so we're not going to do that. But what Rivero said, in essential reasoning, in directly addressing the level of knowledge required, was that as long as the defendant or the person knows that what he's exporting is unlawful to export, that's enough. And the Court made that statement in rejecting the defendant's argument that a higher level of knowledge was required. The defendant needed to know actually what he was possessing, what the items were. And the Court said, no, as long as you know that whatever you have is unlawful to export, you satisfy the statute. And so that's binding precedential language. And the fact that the Court didn't address whether that omission was error in the context of the Rivero case itself, in that footnote, doesn't diminish from the fact that the Court really already has addressed the issue in the Rivero case itself. How do you address the argument that even if there was some error here, that that error is essentially harmless, given the evidence showing the knowledge of the illegal exportation? The error here affected the defendant's substantial rights. This claim is on plain-air review, so I have to show that there's a reasonable probability that but for this error, the jury would have acquitted. And that is the case here, because even if there was evidence that Salgado knew that something was wrong with what he was doing, there's nothing that in particular indicates that he thought the exportation was unlawful. And it's equally plausible, in light of the evidence, that what he thought was wrong was his aiding and abetting of the co-defendant's possession of these bullets in the United States, or of Salgado's possession of these bullets in the United States, or of sending this into Mexico without telling Mexico.  Or any of them. And your argument, and I've been worried about this for some time, but the thought that comes to my mind, if he loads up with all this ammunition, the jury can take a make a reasonable inference. He knows he's doing something wrong. He heads towards the border where his girlfriend is. He heads towards the border where his girlfriend is. And it seems rather it would be easy for the jury to assume that he knows he's going to do something wrong when he crosses the border, because there's all this secrecy. And so is it one of those cases that's no harm, no foul? I can see your point you're making, but the no harm, no foul issue is one that was bothering me, and I'd like to get your point on that. Had this knowledge issue been before the jury, it would have been the big hole in the government's case. It would have been the issue at trial, and a skilled lawyer could have argued to the jury persuasively, I believe, that everything that Salgado was observed doing in this country and admitted to doing in this country, the buying of the bullets in Phoenix, the driving them down towards the border, admitting that he was going to watch as the codefendant drove these bullets out, indicated only that he was concerned with their possession of this stuff in this country. Well, a skilled lawyer might have done that, but we got a case before us where the lawyer was the lawyer, and it seems to me that that's the issue we have to deal with, and it's a very close question. How do we deal with that? Let me say it a different way. There was no evidence that Salgado admitted that he knew that the exportation would be unlawful. Agents never asked him and he never said. There was no testimony by somebody else that he knew that, and there was no evidence that it would have been apparent to him, say, pictures of signs at the border advising people, you can't take certain things out, or no ---- I think the real issue is loading up your car with all this ammunition and heading towards the border would be difficult. What you're saying is there's no specific evidence that he knew this was illegal. That the exportation was unlawful. The exportation was illegal. Right. And where it's equally plausible that he believed, based on this evidence, that their possession was unlawful and not the exportation, then it's reasonably probable, which is the standard on plain air, that the jury would have acquitted had it had this element before. But what about the fact that he informed agents that he was going to be a spotter at the border and that he had done that in the past? Wouldn't a jury be able to infer from that a knowledge of illegality? Why else was he functioning as a spotter but for that? To aid in the co-defendant's unlawful possession of these bullets in this country. Remember that agents asked Salgado when they caught up with him. But it wasn't the possession. It was at the point of being a spotter. He was a spotter at the border. But Salgado told agents that he was acting as a spotter because the co-defendant gets pulled over at the border. That's in his recorded statement played for the jury, that the co-defendant gets pulled over, gets stopped at the border. And so that would be why the co-defendant would ask Salgado to watch the border, because the co-defendant doesn't want to be caught with these bullets. So he gets stopped at the border. And so he's having Salgado watch the border. They're concerned with being caught in this country with the bullets. The co-defendant made it very apparent to Salgado. The co-defendant didn't want to be anywhere near these bullets. The co-defendant paid Salgado to drive them down from Phoenix to the border because, as Salgado told agents, the co-defendant gets pulled over on the freeway, had been pulled over on the freeway twice in the past two weeks. And then the co-defendant wants Salgado to watch as the co-defendant takes these out to look for inspectors, U.S. inspectors, outbound inspectors. And it's equally plausible that the reason was that they were concerned about the co-defendant getting stopped with these bullets in this country during an outbound inspection because he gets searched at the border. Let me move on to an attempt. The attempt error with regard to this same count. This is on de novo review. This error was preserved. The Section 554, the smuggling count, the instructions also omitted the elements of attempt. Attempt is a separate crime in Section 554. This Court held en banc in Gracidas Ulibarri that when Congress uses a common-law term like attempt, the Court must infer, and it quoted Nieder from the Supreme Court, which said must presume, that Congress incorporated the common-law meaning of that term. In Gracidas Ulibarri, it was a reentry statute. And then just after Gracidas Ulibarri, the Court held in Ramirez-Martinez, an alien smuggling statute, that Congress did the same thing when it used the Ramirez-Martinez held that where the same statute includes an attempt crime and a knowledge mens rea crime, that the statute creates and defines two distinct offenses. So attempt was a separate crime here, not a means of commission, and the failure to define attempt for the jury, that it requires specific intent to hear export contrary to law, and that it requires a substantial step, and that it requires jurors to reach a judgment as to whether the defendant had done both of those, wasn't harmless beyond a reasonable doubt. The government on this claim, because it was preserved, has to show that it's clear beyond a reasonable doubt that had jurors been instructed as to attempt's elements that they still would have convicted Salgado, and they can't show that for the same reasons we've argued, that Salgado, the evidence shows that it's just as likely Salgado was concerned with their possession in this country or the illegality of under Mexican law as he was concerned with any unlawfulness under U.S. law. The difference on this claim is that this is — How do you counsel? I mean, when you take the body of the facts that were presented to the jury, driving up to the Phoenix area, purchasing a large amount of ammunition, taking it back, being confronted by agents, and expressing some amount of nervousness or anxiety, and then acknowledging that he was going to be a spotter while at the border and that he had done that before, why is that not grounds by which the jury had more than enough evidence to find that there was an attempt? Well, if this were a sufficiency claim, I would agree, potentially. But on this issue, the government has to show beyond a reasonable doubt that that error is harmless. Beyond a reasonable doubt, jurors still would have acquitted. And this issue would have been the big hole in the case. What was his intent? What was his knowledge? Was it just as to the exportation? I'm sorry. Was it just as to the unlawfulness of their possession, or did it also include and extend to the fact that they were exporting this? And the ---- Was there an objection made to the instruction? There was an objection made to the failure to instruct on attempt, yes. That was preserved. On this specific intent instruction? On the failure to give this Court's model attempt instruction 5.3, which requires specific intent and a substantial step. And how did the Court respond to that? Well, oddly, instructions were settled off the record. And when they came back on the record, the defense counsel said, I asked the Court to give a model instruction 5.3 attempt, and the Court refused, and I object. And there was no further discussion of the issue. I see. And so it's the high beyond a reasonable doubt standard here that we're relying on with regard to this claim, that the government can't show beyond a reasonable doubt that jurors still would have found specific intent to export unlawfully and a substantial step towards doing that. The Court might not think that there's any issue with regard to a substantial step. He bought these bullets. He drove them all down to between 8 and 20 miles north of the border. But that was a genuine jury question in this case, and jurors have to reach a judgment in an attempt case and agree unanimously as to whether the defendant's acts ripened into attempt, whether they unequivocally show that an attempt will take place if it hadn't been interrupted. Because of the high burden on to show harmlessness beyond a reasonable doubt, we would ask the Court to vacate on both on the attempt grounds. I'll reserve the remainder of my time. Roberts. Thank you, counsel. Good morning, Your Honors. May it please the Court, my name is Angela Woolridge, appearing on behalf of the United States in this case. I'll first address the two issues that were brought up by the defendant, starting with the jury instructions for Section 554A, smuggling goods from the United States. I would disagree with the defendant. The government has not conceded error with regard to this issue, but have simply also argued that even if there was any error, it certainly wasn't plain. This Court has not reached the issue of whether knowledge of the unlawful nature of the export is required. In the Rivero case decided just shortly after this trial, this Court expressly declined to reach that issue. And I would, with regard to the law that the defendant relies on as far as Section 545 for unlawful importation, we would also dispute that the Meyer case requires such knowledge. In that case, as we pointed out in our brief, that, in that case, the defendant, there was no knowledge that the defendant had, I'm sorry, there's no evidence that the defendant had any knowledge of importation whatsoever, but simply mere possession. So that doesn't, I don't believe that does then necessarily confer the knowledge requirement of the unlawful nature to such importation. I'm sorry. I took your brief to be arguing on this point that there was not plain error, but I don't, I guess I didn't understand it to be arguing that the instructions here were actually correct. Is that, what is your position on that? It is our position that the instructions were correct in light of what the law is, what the law was at that time, but also it is currently. But in regard, and we did focus our majority of our argument on the plain error standard because in light of the overwhelming evidence that the defendant did have such knowledge, even if this court were to find error, even if this court were to reach that issue, any error certainly cannot be plain in light of the fact that this court hasn't reached that issue in light of the, but especially in light of all the evidence. And I would like to, if I may, address some of that evidence. The defense claims that there was no particular evidence with regard to his knowledge of unlawfulness, and I would point specifically to his statements as far as being a spotter. He stated with regard to that that he had done it several times in the past with the co-defendant and specifically stated that he would be a spotter when the defendant crossed over at the port of entry. And I think that's a very important distinction to make because we already had instances where both of these individuals were possessing ammunition. They both bought it in broad daylight in a store. In fact, they were captured on surveillance footage doing it. A law enforcement agent who happened to be in the parking lot saw them do it. They took no attempts to conceal their identity. This isn't a case where any sort of evasiveness or attempts to remain undetained by law enforcement had anything to do with mere possession. It had solely to do with the instance that they crossed the border, solely with regard to the actual moment when the export would occur. And he mentioned that he, in his statement, that he would let the co-defendant know if there were inspectors in the outbound lanes. I think that, Your Honor, that statement is specifically important because, again, there would be no reason to let the defendant, let the co-defendant know if there were inspectors in the outbound lanes if he was not concerned about the illegality of smuggling goods. I think we have also the fact, again, that it was reasonable for the jury to infer, having had done this before, having had these arrangements made with the co-defendant about how this would take place, that the defendant certainly knew that they were doing something wrong. We also have the fact in this. Well, doing something wrong is not specific intent. That's correct, Your Honor. Doing something wrong may be driving the bullets down to his girlfriend's house. You don't, here you need specific intent, which was not instructed, but so that you can show that there's no doubt there was specific intent, so the instruction error was harmless. Now, where is your evidence that there is specific intent on this person's part that he's going to go across the border with this, with these bullets, and that it is in violation of the law? Where is that evidence? Your Honor, I think the statements about being a spotter are the most important and the strongest evidence, but we start even still in Phoenix with the fact that although both of them bought the ammo in broad daylight, took no attempts to conceal their identity or their possession of it, they then went to a gas station, another location, where they loaded it all together in one car, the car that was going to transport itself. Then we have the fact that he drove quite a long distance south towards the border where he was eventually encountered by law enforcement at his girlfriend's house. We have the fact that, and the case agent specifically testified in this regard, that the defendant became nervous and evasive specifically when asked about what his plans were for the ammunition, not with regard to his possession. He was very forthcoming about that. He readily admitted to the possession and, in fact, popped his trunk and showed him that he had it, had all 12,000 rounds. But he never, he initially became very evasive about what he was going to do with it. It wasn't initially forthcoming, and that's when the agent observed signs of nervousness, and that was in the testimony at trial. But then, again, we get to the fact that he, again, he said that he has done this in his statement, in quotes, he asked me to watch the border before we cross. Again. Where are you? Which part of the record are you on that? I'm sorry. I'm looking at ER 188, which references the defendant's recorded statement that was played at trial. So I think that those statements, there's really no other reasonable inference the jury could have made. Counsel, you've been now saying a couple times, excuse me for interrupting, about the statements of being a spotter, et cetera. What if those statements were not a part of this case? Would that have an impact on your argument that you're making that this was overwhelming evidence? Granted, as Judge Wallace mentioned, 12,000 rounds of ammunition is a lot of ammunition to be transported for whatever purpose. But if there was no statement that he was going to be a spotter or had been a spotter previously, where would that take this case? I would agree that the evidence would not be quite as strong, Judge. But I would still point that there's the other evidence. There's the surreptitious loading of the ammunition in Phoenix. There's just the sheer amount of the ammunition. There's the driving itself, and there is the evasiveness, the twitchy behavior, I think the agent characterized it, when specifically asked about his intentions for the ammunition. So the government's case doesn't rest on the theory or the statements about being a spotter alone or the government's position in this regard. But certainly those are very, very strong evidence. But I believe that then when we take that, again, we have to look at it all in the totality, and when we take it all together with the other evidence in this case that suggests this knowledge, I do think that we have overwhelming evidence for which the jury would not have reached a different conclusion. And again, this is plain error review. The defendant has the burden of showing that the result would have been different. And it's the government's position. He simply has not met that burden of showing that the jury, if instructed that the defendant had to know the exportation was unlawful, would have acquitted the defendant of count one. With regard to the attempt instruction, the defendant did request the set trial. It was not given. But I would point out that here we do have harmless error because, again, there was overwhelming evidence that the defendant had committed completed offenses, and specifically as 554 has alternate ways that smuggling goods and offensive smuggling goods can be completed or can be committed. Here we have that the defendant bought ammunition intended for exportation. He concealed ammunition intended for illegal exportation. He facilitated the transportation of that ammunition. And he admitted to all of those things. He was witnessed by law enforcement doing all those things. He was caught on video surveillance buying it. There are receipts confirming it. But he admitted to doing every single one of those things. So the evidence was overwhelming of these completed offenses, even putting the attempt aside. But then if we look at the attempt as well, the attempt to export or send from the United States, if the jury was instructed, even if that was the only theory that the government was proceeding under and the jury was instructed that there had to be a substantial step towards the completion of the offense, here we have many substantial steps, the buying, the concealing, the transportation, as I already mentioned, the driving up all the way from Phoenix that morning. But the indictment charged him with attempt? How the indictment charges is that the defendant attempted to export or send or bought, concealed, or facilitated the transportation of ammunition. So they are all charged in the conjunctive, so I should have said and rather than or, but that is how he was charged in the indictment, and that is how the jury was instructed. But I would also point out that the government's theory in closing statement was that the defendant was guilty because he had committed completed offenses. The government didn't focus on the attempt to export, but focused on the buying, on the loading the cars or the concealing, the facilitating the transportation by driving south. But I would also submit, again, even if we were to perhaps look at it through an attempt lens, even if the jury was instructed and given the standard instruction with regard to attempt, this went beyond mere preparation. The evidence here is clear and uncontroverted that but for law enforcement showing up at his house and taking the ammunition, that that exportation would have occurred because we heard from the defendant he had plans in place for that to occur. He had plans in place to take that ammunition to the co-defendant's house, to turn it over to him, and then to go to a specific location. They had this all planned out, a specific location where he would act as the spotter as the defendant crossed the border. What was the government's basis for objecting to the attempt instruction, given that he had been charged, that that was included in the charge? It was the government's theory that attempt to export is a completed offense of smuggling. This is not a case where the defendant was charged with violation of Section 554A and Section 2. But because the statute itself, attempt only modifies exporting or send. It doesn't modify the entire statute or all of the ways that the statute can be violated. It's the government's theory at trial and in our brief that attempting to export or send is actually a completed offense of smuggling because the actual exportation doesn't have to occur to be smuggling. The statute is broad and that encompasses a very large realm of elements all taken to facilitate or affect the unlawful export of goods, even if that export doesn't occur. So it is the government's position that attempting to export or send is a completed 554 offense, and that was the reason for that. But, Your Honors, with regard to any, even if any instructional error occurred, whether it be to Section 554, one thing we do concede, obviously, following the rehaif decision of the Supreme Court, is that the government is required to prove the defendant's knowledge of their prohibited status, in this case that the defendant was a convicted felon. But here, again, any error was not plain because the defendant, in his statement that was played and as the defense concedes, said that he was a convicted felon, that he had served one or two years for his felony. When initially confronted with the fact that he was a convicted felon, he conceded it, certainly wasn't surprised in that regard. So we would submit that the defendant has not met its burden to show any plain error with regard to any of the other instructions. And, Your Honors, I will just use the remainder of my time, unless there's any particular area you would like me to focus on, to address the closing arguments. I would simply point out that the government's closing, while every statement certainly may not be perfect and could have been worded better, that the entirety of the closing argument focused on the evidence, on the facts, and on the instructions that the judge gave the jury. There was no focus here on any improper factors. In fact, in looking at the arguments in its entirety, asked the jury to focus on the facts and the instruction, and that was what the arguments came down to. And I would point out that the very last statement that the government asked the jury to do was to, I would simply ask you to take a look at the evidence that you received in the case, consider the testimony that you heard, consider the instructions that the court will give you, not what myself or what Mr. Williman say the law is, but the instructions in the law that the court gives you. And so, again, they specifically instructed the jury to follow the law and the instructions and not statements of counsel, and I see my time is up. Roberts. Thank you, Ms. Woodbridge. Mr. Mohr. Thank you. Judge, I want to stay focused on the attempt error, because that was preserved and the government has to show harmlessness beyond a reasonable doubt. The government argues that it can show – I think it argues that it can show harmlessness by also showing, even if it can't show that the failure to instruct on attempt was harmless beyond a reasonable doubt, that the jury would have still convicted on the second distinct crime duplicitously charged in the same count. It would have to do so beyond a reasonable doubt due to the attempt error. So in analyzing whether or not – what the jury would have done, the court has to focus on whether the government can show it's clear beyond a reasonable doubt that the jury still would have found specific intent, and not just specific intent to do something unlawful, specific intent to export contrary to law. That's the key in this statute and a substantial step. The court – oh, and the government highlighted Salgado's nervousness when approached by agents and indicated that that – the government sees that as evidence that he thought the exportation was unlawful. He never said that. He never – he was nervous. He was appearing to be evasive as to the co-defendant's involvement and what the co-defendant was going to do with these. But Salgado never gave an indication that his nervousness, any evasiveness, was due to the exportation. The court asked how – how these – how these were charged. Count one is duplicitous. It charges two crimes. The court's case in Ramirez-Martinez makes that clear and makes it plain error. And so if the court finds that both of the errors on the knowledge omission and the attempt omission were harmless, it does still need to reach the unanimity issue. And there was a genuine possibility here of some jurors convicting on different theories because the government argued one theory, one of these two crimes, the by transport with knowledge that it was going to be exported unlawfully. And the defense-closing argument focused only on the other, only on the attempt theory. So some jurors may have convicted on count one by following the government's lead and convicting on the crime of buying and transporting with knowledge that these would be exported unlawfully. And some may have reached guilt by rejecting the defendant's theory, which was solely on an attempt, that there had been no attempt and no – not enough evidence that this was going to take place. Thank you, Mr. Moore. Thank you. The case of United States of America v. Fernando Romero Salgado is now submitted.
judges: Wallace, Bress, England Jr.